## FARMER v. STATE.

No. A-11551. Nov. 12, 1952.

(250 P. 2d 229.)

Paul & McPheron, Durant, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. Marvin Farmer, plaintiff in error, defendant below, was charged in the district court of Bryan county, Oklahoma, with having committed the crime of being in unlawful possession of 102 pints of intoxicating liquor, second and subsequent offense, said crime alleged to have been committed on the 29th day of July, 1950, in Bryan county, State of Oklahoma. It appears in said information that he had been convicted of liquor law violations five times prior to the time herein involved. He was tried by a jury, found guilty, his punishment left to the trial court which fixed the penalty at a term of 2 years in the State Penitentiary at McAlester, Oklahoma, a fine of $500 and costs and judgment and sentence was entered accordingly; from said judgment and sentence this appeal has been perfected.

The evidence herein discloses that Ben Risner, sheriff of Bryan county, under and by virtue of a valid search warrant, and in company with his deputies, Fred Lyles, J. C. Mullins and J. R. McLaughlin searched the defendant's premises located at the dead end of North East 8th street, in Durant, Oklahoma. This search did not disclose the defendant was violating the law by being in unlawful possession of intoxicating liquor. It appears traffic moved in a circular manner up around the dead end and that in the center of the street there was unused space forming an island in the center of the street. The record discloses that in this island about 80 or 90 yards north of defendant's drive a stash was found in the island of the U-turn at the dead end of 8th street. A little northwest across the road near a pigpen on some one else's premises was found another stash of liquor. These stashes consisted of barrels buried in the ground, containing the liquor. The one in the center of the street was covered with what was variously described as an aluminum, tin or granite pan. The one to the northwest across the road was covered by a piece of what might be termed rubberized paper. There is no positive proof that this defendant was ever in possession of the 11 lugs found in the stash in the center of the street or the 6 lugs of intoxicating liquor found in the one to the northwest near the pigpen. The evidence in relation to his possession of the said liquor is entirely circumstantial. The only evidence tending to connect defendant with the liquor was the evidence that there were automobile tire tracks around the U-turn and leading into the defendant's premises. These tire tracks were not compared with the tires on the defendant's automobile until 2 days after the seizure of the liquor was made. The defendant's

146

automobile was not at home at the time the seizure was made. The only other circumstance tending to connect the defendant with the possession of the liquor herein involved was the testimony of Sheriff Ben Risner to the effect that the defendant when Risner came the day before the trial to step off some distances, told him, "You are making it hard on me". The evidence in relation to the tire tracks, of deputy sheriff Fred Lyles, was to the effect that the tracks in the road were identical with those of the defendant's automobile. We cannot help but comment that though this was positively true it is not sufficient to connect the defendant with the possession of the intoxicating liquor herein involved. Lyles admitted that, "there is quite a little traffic around the island in the middle of the street", and that there were other houses in the block and that he had seen many tire tracks similar to those on the defendant's automobile.

Deputy Sheriff J. C. Mullins testified in relation to the seizure and where the stashes were found substantially as did Officer Lyles, and that in the drive around from this stash in the middle of the street there were quite a few tracks around there. On cross-examination he admitted that there were several car tracks in the street, as a matter of fact, quite a few; that he could tell there had been several cars down there; that he had seen other tracks similar to those made by the defendant's automobile.

Mr. J. R. McLaughlin, deputy sheriff of Bryan county, testifying for the state, testified substantially as did Officers Lyles and Mullins, that there were car tracks that came up the street and around the stash and the tracks led into the defendant's gate entrance. He said the tracks made in the street and leading into the gate were similar to those on the defendant's automobile. He admitted that there were more than one other tire tread marks in the street around the island; that there had been quite a bit of traffic around the island or turn in the street; and that he had seen other treads similar to those on the defendant's automobile, and that possibly there were thousands of them.

Sheriff Ben Risner's testimony was substantially the same as that of the other officers except to the effect, as hereinbefore indicated, that on the morning of the trial he went out to step off some distances and as heretofore related that the defendant said, he was trying to make it "rough on me and was showing partiality", and that he appeared to be angry. He admitted that they never did find any whiskey on Mr. Farmer's premises but that all the whiskey they found was in the middle of the street and to the northwest towards the pig pen on somebody else's premises. In addition to the foregoing, evidence was offered to prove that the defendant had been five times prior to the charge herein involved convicted of liquor law violations.

Under the conditions herewith presented there is no positive proof or circumstantial evidence sufficient to establish that the defendant had ever been in possession of the whiskey herein involved, or that he exercised any control over the same. The whiskey found by the officers was not found on the premises occupied by the defendant nor is there any evidence to the effect that the defendant sold any whiskey from his premises. At most the state's evidence only raises a suspicion. It is true that the defendant did not take the witness stand and deny possession. Nevertheless, the burden of proof in relation to possession and control of the liquor herein involved was upon the state. None of the officers herein or any one else claimed to have seen the defendant in possession of the whiskey. The only evidence tending to connect the defendant with the whiskey herein involved is that the officers found tire tracks leading from the street into the defendant's gateway, and that the tire tracks in the street corresponded with the design on the defendant's tires. They admitted that there were other tire tracks making the turn around and turned in the center of the street. There is

no evidence showing foot tracks from the defendant's premises to the island in the middle of the street. There was evidence, however, that showed footprints from the island in the street to the stash across the street to the northwest near the pigpen. The foregoing constitutes in substance the state's case.

Under the statutes of the state the defendant is presumed to be innocent until his guilt has been established by competent evidence beyond a reasonable doubt and that presumption follows the defendant throughout the trial, until overcome by competent evidence sufficient to convince the jury beyond a reasonable doubt of his guilt.

It is further well established that this court will not disturb the verdict of the jury on account of the lack of evidence where there is competent evidence to support it. Conversely, the rule is equally well settled, that it is not only the province of the court to set aside the verdict when it is contrary to the evidence, or there is no competent evidence to support it. Moreover, it has been repeatedly held by this court that where a conviction rests solely upon circumstantial evidence the circumstances must be such as to exclude every other reasonable hypothesis except that of guilt, and where the circumstantial evidence does nothing more than create a suspicion that the defendant may have had the opportunity to commit the crime charged or because of the defendant's bad character he may have been of a disposition to commit the crime and where such circumstances are relied on for conviction they must raise to that degree of certainty as to negative every reasonable hypothesis except that of the defendant's guilt. Stump v. State, 66 Okla. Cr. 391, 92 P. 2d 616; Jackson v. State, 13 Okla. Cr. 520, 165 P. 619; Hewitt v. State, 61 Okla. Cr. 415, 69 P. 2d 93; Severe v. State, 64 Okla. Cr. 53, 77 P. 2d 116; Craigo v. State, 64 Okla. Cr. 362, 81 P. 2d 336; Eastridge v. State, 57 Okla. Cr. 323, 48 P. 2d 869, 872, wherein it was said:

"Before a jury is authorized to find a defendant guilty, there must be evidence sufficient to show that the offense charged was committed and to identify defendant with the commission of it as charged in the information."

Under the circumstances herewith presented there is no question but what the crime was committed, but so far as the defendant herein is concerned the evidence is wholly insufficient to identify him with the commission thereof. It is merely sufficient to create a suspicion of guilt. No doubt the jury was influenced by the prior bad record of the defendant, which under the law could not be considered as evidence of guilt of the specific crime charged. Solomon v. State, 79 Okla. Cr. 93; 151 P. 2d 944. No court has a right to imprison a man on the basis of surmise or suspicion. Nevertheless, the officers in the case at bar are to be commended for their diligence and their effort to enforce the law. Only because of the insufficiency of the proof as to the instant crime, we hold that the trial court erred in not sustaining the defendant's motion for an instructed verdict of not guilty.

There are other issues raised herein but under the circumstances it will not be necessary for us to consider the same. For all the above and foregoing reasons, the judgment and sentence is accordingly reversed, with directions that in the event the state can offer no further proof as to the defendant's possession of the intoxicating liquor herein involved to dismiss the within action.

JONES and POWELL, JJ., concur.