## SLATON v. STATE.

No. A-11705.  April 29, 1953.

(257 P. 2d 330.)

Paul Harkey, Idabel, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

BRETT, J.  Plaintiff in error, Isaac N. Slaton, was charged by information in the county court of McCurtain county, Oklahoma, with the offense of unlaw-

ful possession of 36 half gallons and one quart of non-tax paid whiskey within the aforesaid county, on or about the 19th day of May 1951. He was tried and convicted by a jury which was unable to agree on the punishment, which punishment was fixed by the trial court at a fine of $100 and 30 days in jail. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

The defendant filed a motion to suppress the evidence herein, but the record has not been properly preserved to present the same to this court. None of the testimony at the hearing thereon nor the affidavit and search warrant herein involved was in the record, hence the validity of the search and seizure is not properly before this court for consideration. A case will not be reversed by reason of overruling of motion to suppress the evidence where the case-made does not contain the affidavit, the search warrant, or the evidence taken at the hearing on the motion to suppress. Passmore v. State, 87 Okla. Cr. 391, 198 P. 2d 439; Byrd v. State, 91 Okla. Cr. 129, 216 P. 2d 596. The case therefore will be determined on its merits.

The facts herein are briefly as follows: The defendant's home was located east of a north and south graveled highway in McCurtain county. The defendant's house was some 70 yards east of the highway. Under a search warrant the sheriff and his aids searched the defendant's home and curtilage and found no whiskey. The defendant's house was located on a hill through which the north and south highway had been deeply cut leaving rather high embankments on the sides thereof and to the west and the south of defendant's house. On the north side of the Slaton 40-acre premises about a quarter of a mile away was an east and west road intersecting the north and south graveled road. When the officers found no whiskey at Mr. Slaton's home they went across the graveled highway some distance south and west of Mr. Slaton's place into another unoccupied field owned by a Mr. Hicks, which field consisted of partially grazing and partially wooded land. It was in this field that the officers found the whiskey hidden in postholes some few yards away from the fence line and otherwise buried in the ground and stashed in tree tops, none of which was in sight of Mr. Slaton's house. The record shows that the only evidence to connect the defendant with the whiskey herein involved was the fact that there was a path west of the defendant's home on the opposite side of the highway from his house running up a bluff or cut leading from the graveled road into the field where the whiskey was stashed. The only other evidence tending to connect the defendant with the whiskey was the testimony of Jack Julian, city officer of Valliant, as follows, to-wit:

"Q. Mr. Julian, while Mr. Emery Smith, Mr. Pollard and Sam were over in that field making a search, in conversation with you, did Mr. Slaton make any conversation to you relative to whiskey? A. Yes. Q. Tell the jury what that was. A. I was asking Mr. Slaton to quit selling whiskey and he told me it wouldn't do any good to tell you I am not selling whiskey because you know I am and he said but they can't find it. Q. Did you make any reply to that? A. I said I can find it and he said well don't."

In connection with the trails it was also disclosed that there was evidence of another trail going directly north from the cache and extending through the field a quarter of a mile to the east and west road where there were truck tracks near the fence and evidence of the fact that the fence had been disturbed where possibly whiskey had been unloaded and carried to the cache. It was further testified that there was another trail leading from the cache some distance south of Mr. Slaton's drive which led directly into the highway. The record further shows there were other paths leading to the cache from points other than Mr. Slaton's place which paths forked off to Mr. Boucher's, Mr. Miles' and Mr. Van Landingham's places. Moreover it was testified to by Waldo Miller, Haskell Benson, H. E. Alexander and Luther Byrd that the vicinity of the cache was known

as the Pole Community and had the reputation of being a place where whiskey makers back up in the hills brought their liquor and hid it. Furthermore, the record shows this whiskey was accessible to persons traveling the graveled highway and that frequently at night cars were heard stopping in the vicinity of the cut. It is therefore apparent that this whiskey might have belonged to many other people than this defendant. It is also apparent that the evidence hereinbefore set forth in no way positively and convincingly placed the defendant in possession of the liquor herein involved. No one testified that it was his, that he was seen planting the liquor, bringing the same out or in any wise exercising dominion and control or possession thereof. In the face of such a lack of positive evidence tending to connect the defendant with the whiskey we must examine closely the purported admissions against interest of the defendant allegedly made to Mr. Julian who supposedly was playing the role of his friend when he heard the hereinbefore statements made. The conditions under which it was obtained cast grave doubt upon it. The attempted veil of friendship thrown about it in our opinion weakens instead of strengthening it. Without that evidence which only adds color to the suspicion of guilt, the state would have had no case at all. We will not permit a conviction to stand upon a suspicion of guilt. Proof of guilt must be beyond a reasonable doubt. Such proof is not available in this case. The evidence herein involved was purely circumstantial and of the weakest character. This court has repeatedly said:

"It is well settled that this court will not disturb the verdict for lack of evidence where there is competent evidence to support it. The converse rule is equally well settled, that it is not only the province but the duty of the court to set aside the verdict when it is contrary to the evidence, or there is no competent evidence to support it.

"Where the state relies for a conviction upon circumstantial evidence, the facts proven must be such as to exclude every reasonable hypothesis other than the guilt of the defendant of the offense charged in order to sustain a conviction.

"A failure to connect the plaintiff in error with the crime charged by positive proof, or by circumstances which would exclude every other reasonable hypothesis except that of guilt, is fatal to a conviction." Farmer v. State, 96 Okla. Cr. 144, 250 P. 2d 229.

A reading of the Farmer case will disclose marked similarity to the facts herein involved. The case at bar is not as strong as were the facts against the defendant in Lemke v. State, 33 Okla. Cr. 34, 241 P. 832, wherein Lemke was seen tramping weeds ostensibly to finding eggs in the vicinity of where the whiskey was found buried in the sand on the section line south of the defendant's house. This court reversed the Lemke case for insufficiency of evidence. See, also Mahaffey v. State, 44 Okla. Cr. 29, 279 P. 704 and Lee v. State, 52 Okla. Cr. 127, 3 P. 2d 243, both of which were cases involving circumstantial evidence but of a much stronger character than that involved in the case at bar, and both of which were reversed for insufficiency of evidence. Under the foregoing record and authorities the judgment and sentence herein imposed is accordingly reversed with directions to dismiss the action.

POWELL, P. J., and JONES, J., concur.